UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DECORATIVE HARDWARE STUDIO, INC.,

               Plaintiff,

   -against-                                        12-CV-3156
                                                      OPINION & ORDER
CLAWFOOT SUPPLY LLC, d/b/a SIGNATURE
HARDWARE,

               Defendant.

-------------------------------------------------------------------X
WOOD, U.S.D.J.:

        On June 18, 2012, the Court issued a Consent Judgment entered into by Decorative Hardware Studio, Inc. ("Plaintiff") and Clawfoot Supply LLC d/b/a/ Signature Hardware ("Defendant"). *See* (Consent Judgment [Dkt. No. 8]). The Consent Judgment provided that the Court retained jurisdiction over the parties for the purpose of interpreting and enforcing the Consent Judgment and a related Settlement Agreement between the parties. (*Id.* ¶ 2). Plaintiff alleges that Defendant violated the Consent Judgment and Settlement Agreement and moves to hold Defendant in contempt. *See* (Letter in Supp. 1 [Dkt. No 9]). Plaintiff seeks compensatory damages, liquidated damages, a permanent injunction, and attorney's fees and costs. (*Id.* at 4–5). For the reasons set forth below, Plaintiff's motion is DENIED.

    **I.**    **Background**

        Both Plaintiff and Defendant sell decorative hardware, including carpet rods. (Compl. ¶¶ 11, 31 [Dkt. No. 1]); (Letter in Opp. 1 [Dkt. No. 12)]). "A carpet rod . . . is a mechanism that holds carpet runners in place, typically on stairs. Most carpet rods consist of three component parts: a plain rod to hold the carpet in place; mounting brackets to hold the rod in place; and

finials to hold the brackets in place." (Letter in Opp. 2).  Plaintiff adorns the top portion of certain carpet rod brackets "with a stylized acanthus design."[1]  (Compl. ¶ 16).  Plaintiff registered this design with the United States Patent and Trademark Office under Registration No. 3,332,100 (the "ACANTHUS Trademark").  (Id. ¶ 22).

On April 20, 2012, Plaintiff filed a Complaint against Defendant alleging that Defendant was selling Leaf Stair Rod Brackets that infringed on Plaintiff's registered ACANTHUS Trademark.  (Id. ¶ 33).  On June 14, 2012, the parties entered into a Settlement Agreement.  (Letter in Supp. Ex. 2).  On June 18, 2012, the Court issued a Consent Judgment entered into by the parties, which incorporated some of the terms of the Settlement Agreement.  See (Consent Judgment).  Under the relevant terms of the Settlement Agreement, Defendant "and its current owners and their families" agreed to not:

> (a) sell, offer for sale, promote, or advertise in the United States any product bearing a trade mark, design, or symbol that is the same as or confusingly similar to the ACANTHUS Trademark;
>
> (b) display in the United States, on or in connection with any decorative hardware product, a trade mark, design, or symbol that is the same as or confusingly similar to the ACANTHUS Trademark.

(Letter in Supp. Ex. 2, ¶ 2).  The Settlement Agreement also required Defendant to "represent[] that all inventory of the Leaf Stair Rod Bracket has been returned to the manufacturer . . . or has been shipped to [Plaintiff]" and, "[n]otwithstanding this representation, if [Defendant] still holds

---

[1] According to the Complaint:
> Acanthus is the common name for a member of the Acanthaceae, a family of chiefly perennial herbs and shrubs, mostly native to the tropics.  A few members of the family, many of which have decorative spiny leaves, are cultivated as ornamentals, particularly the Mediterranean acanthus, or bear's-breech.  The ornate leaves of the Mediterranean acanthus were the source of a stylized motif used in Greek and Roman art, especially on the capitals of Corinthian columns.  In Christian art, the acanthus symbolizes heaven.

(Compl. ¶ 17).

inventory of the Leaf Stair Rod Bracket" it shall deliver to Plaintiff the remaining inventory or destroy it within five days.  (*Id.* ¶ 5).

The Settlement Agreement included a notice and cure provision.  It provided that if either party alleges "that this Settlement Agreement has been breached or the Consent Judgment has been violated in any manner, the complaining party shall give the other party written notice thereof" and "15 days to cure any breach or violation."  (*Id.* ¶ 14).  No litigation may be pursued unless the other party fails to cure.  (*Id.*).  However, "[i]f judicial intervention is thereafter sought, the prevailing party shall recover its reasonable costs and counsel fees, except if the Court finds that the complaining party acted in good faith in alleging that the other party breached [the] Settlement Agreement or violated the Consent Judgment."  (*Id.*).

Prior to executing the Settlement Agreement, Defendant provided Plaintiff with an affidavit attesting to the fact that it no longer sold any products bearing the ACANTHUS mark, and no longer had any such products in its inventory.  (Letter in Opp. 2, Ex. D).  Defendant also "undertook extensive efforts to remove all references to the Acanthus mark from the company's promotional materials exceeding 60,000 products on its website, exceeding 17,000 on eBay, and in numerous catalogues and promotional materials.  [Plaintiff] had full access to both [Defendant's] website and the eBay website to confirm that [Defendant] was no longer displaying the offending products."  (*Id.* at 2).

### A.  Events Leading to the Present Motion for Contempt

On February 13, 2013, Plaintiff discovered the Crown Stair Rod on Defendant's website.  (Letter in Supp. 3).  Plaintiff believes that the Crown Stair Rod includes a design confusingly similar to the ACANTHUS Trademark, and that the display of the stair rod thereby violates the Settlement Agreement and Consent Judgment.  (*Id*. at 2–3).  On February 15, 2013, Plaintiff

3

invoked the notice and cure provision of the Settlement Agreement, and sent a letter to Defendant, demanding that the product be removed from its website.  *See* (*Id*. at 3, Ex. 8).  On February 21, 2013, Defendant notified Plaintiff that, although it was not "admitting any violation," the company had removed the allegedly infringing product from its website.  *See* (*Id*. at 3, Ex. 10).  Plaintiff added that the product would "not be further displayed, offered for sale, or sold."  (*Id*.).

On March 7, 2013, a customer contacted Plaintiff about the Crown Stair Rod, which the customer claimed to have seen on Defendant's website.  (*Id*. at 3).  Plaintiff's counsel notified Defendant's counsel of this call, and Defendant's counsel assured him that the product had remained on the website by inadvertence and that Defendant was not selling the product.  (*Id*. at 3, Ex. 11).  Plaintiff's counsel "insisted on having sworn statements from his client; otherwise [he] would seek to have [Defendant] held in contempt of the Consent Judgment."  (*Id.* at 3).  On April 2, 2013, Matthew Butler, Defendant's owner, affirmed that the Crown Stair Rod bracket was "no longer sold by [Defendant]," and that the company "has no such brackets in its inventory or otherwise in its possession."  (*Id*. at 3, Ex. 12).  On June 12, 2013, Mr. Butler filed a supplement to his affidavit.  (*Id*. at 3–4, Ex. 13).  Mr. Butler affirmed that the Crown Stair Rod bracket had "remained on [Defendant's] website by inadvertence," but that the image had now been removed from the website and that the stair bracket had not been sold since the parties entered into the Settlement Agreement.  (*Id*.).

On November 4, 2013, Plaintiff discovered photographs of the Crown Stair Rod and the Traditional Stair Rod on eBay.  (*Id*. at 4).  Plaintiff believes that both products infringe on the ACANTHUS Trademark and, therefore, that Defendant had violated the Settlement Agreement

and Consent Judgment. (*Id*. at 2–3). However, rather than invoking the notice and cure provision of the Settlement Agreement, Plaintiff filed the present motion for contempt.

Defendant explains that, although it "had destroyed its entire inventory of Acanthus brackets, it continued to sell generic rods and finials — activity that is not barred by the Settlement Agreement." (Letter in Opp. 3). Defendant writes that, "in its eBay listings for these component parts, [Defendant] displayed photographs of fully assembled carpet rods. The photographs—which are old, outdated stock images—inadvertently depicted the Acanthus bracket as part of a fully assembled carpet rod. [Defendant] did not offer the Acanthus bracket for sale, nor does it have any products with the Acanthus design in its inventory to make the sale possible." (*Id.* at 3 (internal citations omitted), Ex. G). Even though Plaintiff failed to invoke the notice and cure provision, Defendant "immediately removed the offending listings after it received the letter motion. [Defendant] was even willing to offer affidavits explaining that the eBay listing contained outdated photographs and it was not offering the Acanthus bracket for sale." (*Id.* at 4).

**II.    Discussion**

Defendant asserts that the Motion for Contempt should be denied because Plaintiff filed the motion without notifying Defendant of the allegedly infringing displays on eBay, and without giving Defendant the opportunity to cure the alleged violations. (*Id.*). Defendant further argues that Plaintiff would be justified in failing to use the notice and cure provision only if such notice would be futile. (*Id.*). Defendant denies futility, claiming that its responsiveness to the alleged violations in February 2013 demonstrates that the notice and cure provision would have been effective here. (*Id.*).

Plaintiff asserts that the notice it provided on February 15, 2013, was sufficient to cover the photographs of the Crown Stair Rod on eBay, and that notice with respect to the Traditional Stair Rod photographs found on eBay was excused because Defendant's past behavior indicated that "any alleged cure . . . would more than likely be just a charade." (Letter in Supp. 4).

### A. Governing Legal Standards

Under New York law,[2] "if a contract explicitly states that notice and an opportunity to cure are conditions precedent to bringing or maintaining a claim, courts will enforce that agreement." *Rojas v. Don King Prods., Inc.*, 11-CV-8468, 2012 WL 760336, at *2 (S.D.N.Y. Mar. 6, 2012) (Forrest, J.); *see also USI Ins. Servs. LLC v. Miner*, 801 F. Supp. 2d 175, 181 (S.D.N.Y. 2011) (Preska, C.J.) ("Generally, [s]uch written notice requirements are fully enforceable." (internal quotations marks omitted)). "The adequacy of a purported notice is context-specific, and the sufficiency of the subject notices must be evaluated in light of the requirements of the agreement." *Mahoney v. Sony Music Entm't*, 12-CV-5045, 2013 WL 491526, at *7 (S.D.N.Y. Feb. 11, 2013) (Peck, Mag. J.) (internal quotation marks omitted). "[T]he Court should look at whether a party's good faith effort to comply with the notice requirement was sufficient to serve the general purpose of that particular notice provision under the circumstances." *Id.*

"[T]he exception to the general rule favoring enforcement of notice and cure provisions is a narrow one." *Point Prods. A.G. v. Sony Music Entm't, Inc.*, 93-CV-4001, 2000 WL 1006236, at *4 (S.D.N.Y. July 20, 2000) (Buchwald, J.). A party may be relieved from complying with a notice and cure provision, if doing so would be futile or a "useless act." *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991). "Such circumstances

---

[2] The Settlement Agreement is governed by New York law. (Letter in Supp. Ex. 2, ¶ 12).

6

include when the nonperforming party either expressly repudiates the parties' contract or abandons performance thereof, when the misfeasance is incurable, and when the cure is unfeasible." *Needham v. Candie's, Inc.*, 01-CV-7184, 2002 WL 1896892, at *4 (S.D.N.Y. Aug. 16, 2002) (Swain, J.) (internal citations omitted), *aff'd*, 65 F. App'x 339 (2d Cir. 2003).

"The termination of a contract is not presumed, and the burden of establishing it rests upon the party who asserts it." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 816 F. Supp. 864, 870–71 (S.D.N.Y. 1992) (Edelstein, J.) (quoting *Armour & Co. v. Celic*, 294 F.2d 432, 436 (2d Cir. 1961)). "Abandonment may be implied from the attendant circumstances and the conduct of the parties, but only if the parties' conduct is 'positive, unequivocal and inconsistent with an intent to be further bound by the contract.'" *Id*. at 870 (quoting *Armour*, 294 F.2d at 436).

### 1. Notice With Respect to the Crown Stair Rod

Plaintiff asserts that it was justified in filing the motion for contempt without invoking the notice and cure provision with respect to the Crown Stair Rod, because notice had already been provided through the February 15, 2013, letter. (Letter in Supp. 4). That letter, Plaintiff claims, should have alerted Defendant that it may have photographs posted on other websites that violated the Settlement Agreement and Consent Judgment. (Reply Letter in Supp. 2–3 [Dkt. No. 14]).

The Court finds that the notice provided by the February 15, 2013, letter was insufficient to alert Defendant to search its eBay listings for photographs of the Crown Stair Rod. "[C]ontractually-required notices of breach must provide sufficient information for the noticed party to determine what steps [are] necessary to cure the alleged breaches." *In re 4Kids Entm't, Inc.*, 463 B.R. 610, 682 (Bankr. S.D.N.Y. 2011). In its February 15, 2013, letter to Defendant,

Plaintiff complained solely about the Crown Stair Rod photographs on Defendant's website, and demanded removal of those photographs. (Letter in Supp. Ex. 8, 9). Nothing in Plaintiff's letter alerted Defendant that it should investigate more broadly than the precise violation that Plaintiff brought to its attention, and Plaintiff provides no case law or other evidence to support its claim that Defendant had to do more or should have suspected that the same photographs were listed on other webpages controlled by Defendant. *Cf. Domen Holding Co. v. Aranovich*, 802 N.E.2d 135, 140 (N.Y. 2003) (finding notice sufficient where three specific violations were noted and notice specifically stated that the violations were not limited to the three listed instances).

Accordingly, the Court finds that Plaintiff's February 15, 2013, cure notice was insufficient to notify Defendant of the allegedly infringing Crown Stair Rod photographs on Defendant's eBay listings.

### 2. Notice With Respect to the Traditional Stair Rod

Plaintiff asserts that it did not need to comply with the notice and cure provision with respect to the Traditional Stair Rod, because "given [Defendant's] dishonest dealings with [the Crown Stair Rod], any alleged cure with respect to the Traditional Stair Rod would more than likely be just a charade." (Letter in Supp. 4). Plaintiff appears to invoke the futility exception to complying with the notice and cure provision, on the ground that Defendant effectively abandoned performance of the Settlement Agreement.

The Court finds that Plaintiff has not met its burden of showing that Defendant abandoned the Settlement Agreement. *See Int'l Bhd. of Teamsters*, 816 F. Supp. at 870–71. The three instances of infringement alleged by Plaintiff do not amount to conduct that is "'positive, unequivocal and inconsistent with an intent to be further bound by the contract.'" *Id.* at 870 (quoting *Armour*, 294 F.2d at 436). Past interactions between the parties are relevant. *See, e.g.*,

*In re Best Payphones, Inc.*, 432 B.R. 46, 58 (S.D.N.Y. 2010) (Gardephe, J.) (finding a notice to disconnect service did not constitute a repudiation in part, because the "parties' history" included an instance in which Defendant reversed an order to suspend service to Plaintiff).  Here, in response to the cure notice sent in February of 2013, Defendant removed the allegedly infringing Crown Stair Rod photographs from its website, and, although Plaintiff failed to provide a cure notice with respect to the photographs on eBay, Defendant removed the offending photographs after receiving the present motion for contempt.  Defendant also offered to send Plaintiff affidavits explaining that the eBay listings contained outdated photographs, and that it was not offering the Acanthus bracket for sale.  "A party's efforts to negotiate through a breach of contract reflect an intent to honor the contract not abandon it."  *C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 433 (S.D.N.Y. 2005) (Pauley, J.).

Accordingly, the Court finds that Defendant did not abandon the Settlement Agreement; compliance with the Agreement's notice and cure provision would not have been futile.  Plaintiff therefore should have provided Defendant with notice and an opportunity to cure with respect to the Traditional Stair Rod.

### III.   Conclusion[3]

For the reasons set forth above, Plaintiff's motion is DENIED.

SO ORDERED.

Dated: New York, New York
       June 18, 2014

_____/s/_____
Kimba M. Wood
United States District Judge

---

[3] Pursuant to the Settlement Agreement, Defendant requests that the Court award it attorney's fees and costs expended in defending against the motion for contempt. (Letter in Opp. 6).  Because the Court finds that Plaintiff acted in good faith in alleging that Defendant violated the Settlement Agreement and Consent Judgment, the Court declines to award Defendant its fees and costs. (Letter in Supp. Ex. 2, ¶ 14).